**Helen SEGAL, Plaintiff,**

v.

**GREAT AMERICAN INSURANCE CO., Defendant.**

**No. 73 C 1671.**

United States District Court, E. D. New York.

March 5, 1974.

Helen Segal, pro se.

Greenhill & Speyer, New York City, for defendant.

DOOLING, District Judge.

Plaintiff is one of the named insureds under the defendant's Flood Insurance Policy issued pursuant to the National Flood Insurance Act of 1968, 42 U.S.C. § 4001 et seq. The action was instituted pursuant to the provisions of 42 U.S.C. § 4053.

The action is brought to recover for damages to a rug located in the den of the plaintiff's home at 137 Larch Drive, New Hyde Park, New York.

The evidence is clear that on the day in question, which was either April 3d or perhaps April 4th, 1973, rain fell heavily in the area of plaintiff's residence. The house is a "split level" house; the den, or recreation room, is located at roughly the same level as the two-car garage and is at the lower of the two levels of the house. On one side of the den is a pair of sliding glass doors in metal frames that look out on a paved terrace or patio. The patio has two drains in it and is bordered or framed by a retaining wall comprised of one course of brick, best seen in Exhibit C. This very low retaining wall enclosed the terrace or patio along the left side as one looks out through the glass doors from the den, runs across the side of the patio opposite the sliding glass doors, then turns and comes down the right side to where steps lead up to the kitchen of the split level house. Just outside the sliding glass doors and running the width of the masonry opening in the wall in which the glass doors were set is a low wall, one course high, of bricks that runs from one side of the masonry opening to the other so as to create a sort of dam across the opening in the masonry in which the sliding glass doors and their framing are fitted. There are a few inches of clearance between this low brick wall and the sliding doors, best seen in Exhibit E.

A recent survey shows that the ground rises back of the patio to a high point about 19 inches higher than the deck of the patio and about 18 inches higher than the floor of the den. To the left or blind side of the den the ground falls away very slightly. It falls away also to the right of the patio from the high point at the rear of the yard, but still is at such points some 10 inches higher than the deck of the patio and some 9 inches higher than the floor of the den.

On the day in question the rain fell very heavily and it is found that it rose to a height in the patio sufficient so that it came across the very low dam into the den and soaked the rug. It resulted in such damage to the rug that it cost plaintiff $226.84 to have it taken out, cleaned and put down again, and to replace the pad under the rug.

The evidence warrants the conclusion that the heavy rainfall did not drain from the patio but the rain water accumulated within the enclosure formed by the retaining wall of the patio until the water, perhaps with the aid of wind, flowed across and over the low brick wall outside the sliding glass doors and into the den.

The patio has two drains in it. These were installed when the patio was in-

stalled more than eight years ago, but, probably, at some time after the house was built, which appears to have been about twenty years ago. It is not suggested that the drains were improperly laid or were inadequate to carry off normal rainfalls, but they were not adequate on the occasion in question to drain off the water either because they were stopped up or because of the quantity of rain that fell. Plaintiff testified that the drain was occasionally cleaned, and there is no evidence at all to support an inference that the drains were not functioning as usual at the time in question.

Neither of the properties adjacent to plaintiff's property (which was one house down from the corner) had flooding conditions on the day in question. Plaintiff testified without contradiction that the rainstorm did cause some flooding in other houses in the neighborhood, but she did not particularize the nature of the flooding or what sorts of properties it affected.

The sole issue raised by defendant is the issue of coverage.

The policy insures to the extent of the actual cash value of the property at the time of loss, but not exceeding the cost of repair or replacement,

> "against all DIRECT LOSS BY 'FLOOD' as defined herein, to the property described while located or contained as described."

"Flood" is defined as follows:

> "Wherever in this policy the term 'flood' occurs it shall be held to mean a general and temporary condition of partial or complete inundation of normally dry land areas from (1) the overflow of inland or tidal waters, (2) the unusual and rapid accumulation or runoff of surface waters from any source, or (3) mudslides . . ."

Excluded are losses

> "By (1) rain, snow, sleet, hail or water spray, . . . ; or (3) water, moisture or mudslide damage of any kind resulting primarily from conditions, causes or occurrences which are solely related to the described premises or are within the control of the Insured (including but not limited to design, structural or mechanical defects, failures, stoppages or breakages of water or sewer lines, drains, pumps, fixtures or equipment, seepage or backup of water, or hydrostatic pressure) or any condition which causes flooding which is substantially confined to the described premises or properties immediately adjacent thereto; . . . ."

The policy language embodies the ideas of 24 C.F.R. §§ 1909.1 ("Flood") and 1911.4(b), (c), (d).

The policy plainly does not exclude flooding arising out of local rainstorms and consequent runoff of surface waters. It does, however, exclude rainstorm damage which results, as a practical matter, to an individual house and is not one that has caused a generalized flooding.

The evidence in the present case is that in the eight years of the plaintiff's occupancy, during all of which the patio was in place as at present, no other rainstorm had produced such a flooding condition in the den. If the thought of the policy is that it should cover only flooding arising from the extraordinary rainstorm which occasions local flood damage, it might be found that the storm here in question was of sufficient severity to qualify if it produced any general flood damage in the area in which it fell. Simple rain damage itself is excluded, and the policy excludes as well flooding that results from a defect in maintenance or design in the particular property, such as stopped drains causing backup flooding that would not have occurred if the drain had been cleaned.

The defendant suggested that the design was inadequate, and pointed to the very existence of the low barrier across the masonry opening in which the doorway is set, the existence of two drains instead of the conventional single drain for so small a patio, and the presence nearby of two open leaders that dis-

charged to the back lawn at points above the grade of the patio, as uniting to show that defective layout and grading were recognized and were inadequately dealt with by the architect of the patio. (As indicated above, there is no basis for finding a defect in the drains or that they were stopped up.) Eight years of untroubled experience fully answer the suggestion of defective design. While the slope of the land certainly would feed water to the patio in some circumstances, the yard area involved is unpaved, and, while the picture shows it as snow-covered, it would appear to be normal lawn area, and the run-off from it, except in the case of a torrential rain, would not amount to a great deal as against the much larger amount that would go underground. Hence, while the design might have been different, it was not defective.

'The real difficulty is that the flooding was so substantially confined to the described premises that it is excluded from coverage, and it is on that ground that recovery must be denied. There is evidence that undefined "flooding" occurred nearby, but the immediately adjacent properties were not flooded, and the first factor in finding a covered flood condition, is that the flooding be shared by more than one property and its adjacent properties. It follows then that, whether or not the particular rain caused flooding nearby it did not give rise to a covered flood condition at plaintiff's property. It is therefore concluded that plaintiff has not made out a case of coverage under the policy. *Cf.* Mason v. National Flood Insurers Assn., D.Hawaii, 1973, 361 F.Supp. 939 (patio collapsed from ocean wave undermining).

It is, accordingly,

Ordered that defendant is entitled to judgment and the Clerk of Court is directed to enter judgment that plaintiff take nothing and that the action is dismissed on the merits. Since plaintiff has appeared *pro se*, no costs are to be taxed against the plaintiff.